UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLITE, INC., | ) | CASE NO. 5:09CV1401 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AMERICA CANAS, | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court is the motion to dismiss filed by defendant America Canas ("Canas") (Doc. Nos. 24-25, 26) and plaintiff Marlite, Inc.'s ("Marlite") memorandum in opposition (Doc. No. 31).[1] For the reasons set forth below, the motion to dismiss is **DENIED**; however, the Court will **TRANSFER VENUE** to the United States District Court for the Southern District of Florida.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marlite is an Ohio corporation. It manufactures slatwall and sells it to both distributors and end-users. Marlite has plants in several areas, including Miami, Florida. Canas was employed by Marlite at its Miami facility as a sales manager. As a condition of her employment, Canas signed a Confidentiality and Non-Solicitation Agreement (the "Agreement") with Marlite.

In January of 2009, Canas's sales manager position was affected by a reduction in force made necessary by the current economic conditions. However, because Marlite did not

---
[1] Although the Court permitted the filing of a reply brief, no such brief has been filed.

want to lose Canas, it offered her a sales position at a lower salary, but with the possibility of significant sales commissions. Canas accepted the position, but in May of 2009, she resigned. Marlite soon discovered that Canas had taken a job with one of its competitors.

In this action, Marlite alleges that Canas is breaching the Agreement by soliciting Marlite's customers on behalf of her new employer. The Court issued a Preliminary Injunction against Canas on July 22, 2009. (Doc. No. 35.)

Prior to the issuance of the Preliminary Injunction, Canas filed the instant motion to dismiss which is now at issue.

## II. DISCUSSION

**A.     Personal Jurisdiction**

In this case, the Agreement contains a provision which states that "[t]he parties [. . .] consent and agree to jurisdiction [. . .] for any claim or cause of action arising under or related to this Agreement in the state or federal courts located in or for Tuscarawas County, Ohio." (Doc. No. 23-10, ¶ 13.) Personal jurisdiction, unlike subject matter jurisdiction,[2] is a waivable right and, by signing the Agreement, Canas arguably consented to jurisdiction in this Court, notwithstanding her residence in Florida.[3] However, the Court need not decide whether this particular provision in the Agreement is enforceable because it concludes, as discussed below, that it has personal jurisdiction over Canas with or without that clause in the Agreement.

---

[2] There is no question that this Court has subject matter jurisdiction under 28 U.S.C. §1332.

[3] Use of a forum selection clause is a common way for contracting parties to agree in advance to submit to the jurisdiction of a particular court. *See generally M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Enforceability of a forum selection clause such as this is a question of law and both Ohio law and federal law treat these clauses similarly. *General Electric Co. v. G. Siempelkamp*, 29 F.3d 1095, 1098 n.3 (6th Cir. 1994). However, the Court notes that these clauses are typically found in the context of a contract involving two commercial parties engaged in arm's-length transactions, not an individual and her employer.

When a defendant challenges personal jurisdiction, the burden is on the plaintiff to establish the court's jurisdiction by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

> Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Serras [v. First Tennessee Bank Nat. Ass'n]*, 875 F.2d [1212], 1214 [(6th Cir. 1989)]. The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion. *See Michigan Nat. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989); *Serras*, 875 F.2d at 1214. However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal. Serras, 875 F.2d at 1214.

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

In this case, the Court has not conducted a separate hearing on the motion to dismiss. However, the motion was filed just one day after the Court conducted a preliminary injunction hearing. The transcript of that hearing is available (Doc. No. 36) and, along with the affidavits of the parties, has been relied upon by the Court in ruling on the motion to dismiss.

"To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *Compuserve Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

> The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *See Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1993) (citing *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994)). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, our central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (Ohio 1994) (per curiam)).

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).[4]

The minimum contacts test for establishing personal jurisdiction is satisfied either through general or specific jurisdiction. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction is established by a defendant's "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 406, 414 (1984). Specific jurisdiction, however, subjects the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum. *Id*.

In *Southern Machine Co. v. Mohasco Industries, Inc.* 401 F.2d 374 (6th Cir. 1968), the court established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

---

[4] Section 2307.382 provides, in relevant part:
(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.
(8) Having an interest in, using, or possessing real property in this state;
(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

>enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381.

The purposeful availment requirement is the "sine qua non" for personal jurisdiction. *Id.* at 381-82. It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person[.]'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). To satisfy the requirement, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation and citation omitted).

Once the purposeful availment requirement is satisfied, a plaintiff must show that the cause of action arises from the defendant's activities in the forum state. This "lenient standard" asks whether the cause of action was "made possible by" or "lie[s] in the wake of" the defendant's contacts, or whether the cause of action is "related to" or "connected with" the defendant's contacts with the forum state. *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553 (6th Cir. 2007).

Finally, when considering the last prong of the due process analysis, the Court is to consider several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Industry Co. v. Superior Court of Solano Cty., Cal.*, 480 U.S. 102, 114 (1987). Where the first two prongs of the due process

inquiry have been satisfied, the Court will "presume the specific assertion of personal jurisdiction was proper." *Cole*, 133 F.3d at 436.

In her affidavit (Doc. No. 26), Canas asserts that she has resided in Florida during all relevant times (¶ 11), worked for Marlite in Florida (¶ 12), signed the Agreement in Florida (¶ 13), and that all events underlying this action occurred in Florida (¶ 14).

Marlite does not challenge any of Canas's factual assertions but argues in opposition, supported by the affidavit of John Popa (Doc. No. 31-2), that Canas's contacts with Ohio are nonetheless sufficient to support this Court's exercise of personal jurisdiction. Relying on *Kelly Services, Inc. v. Noretto*, 495 F.Supp.2d 645 (E.D. Mich. 2007), Marlite points out that Canas voluntarily accepted employment with Marlite knowing that it was headquartered in Ohio. It further argues that Canas reported to various supervisors who worked out of Marlite's Ohio headquarters (Popa Aff. ¶ 8), communicated regularly by telephone and e-mail with Marlite's employees in Ohio (¶ 9), received access to Marlite's confidential business information which was stored on computer databases maintained in Ohio (¶¶ 11-13), and frequently traveled to Marlite's headquarters in Ohio for company meetings (¶ 10).

In *Kelly Servs., Inc.*, *supra*, the court denied a motion to dismiss for lack of personal jurisdiction. There, Noretto, a resident of Oregon, was employed by Kelly Services as a Regional Manager working out of its Portland, Oregon branch office. He was responsible for several counties in Oregon and Washington. Noretto signed a non-competition, non-solicitation, and non-disclosure agreement as a condition of his employment. Noretto voluntarily resigned and then went to work for a competitor of Kelly Services, allegedly soliciting his former clients in violation of the agreement.

6

When Kelly Services sued Noretto in the U.S. District Court for the Eastern District of Michigan, Noretto moved to dismiss on the basis of lack of personal jurisdiction over him. He argued that he was a resident of Oregon and only came to Michigan on several isolated occasions when required to do so as part of his employment with Kelly Services. In opposition, Kelly Services argued that Noretto

> had access to, and utilized on a regular basis, [its] confidential and proprietary information including information concerning Kelly's business affairs, customer lists, operational procedures, marketing and sales strategies and practices, contractual details for customers, regional customer pricing and profit margins, recruiting plans, and recruiting sources. Additionally, Kelly claim[ed] that Noretto acquired intimate knowledge concerning Kelly's customers' preferences and service needs, and had extensive contact with two of Kelly's largest and most critical accounts.

*Kelly Servs., Inc.*, 495 F.Supp.2d at 649.

The court denied the motion to dismiss, concluding that Noretto had transacted business in Michigan and that he had the "minimum contacts" necessary to avoid offending traditional notions of fair play and substantial justice. In particular, the court found that "[Noretto] purposefully availed himself of the privileges of conducting activities within the forum state when he became employed by a company headquartered in Michigan; entered into a non-compete, non-solicit, and non-disclosure agreement with Kelly; entered into the Agreement containing a Michigan choice of law provision; continuously reported to supervisors working in Michigan; made several trips to Michigan for training purposes, and frequently used information stored on the company's Michigan based servers." *Kelly Servs., Inc.*, 495 F.Supp.2d at 653.[5]

---

[5] The court also applied a specific provision of Michigan's long arm statute which provided for limited personal jurisdiction over a person acting as a manager of a corporation having its principal place of business in Michigan. MCL § 600.705(6). There is no similar provision in Ohio's long arm statute. *See*, n.4, *supra*.

The record here shows that Canas had contacts with Ohio very similar to those that Noretto had with Michigan. Therefore, this Court concludes that it has personal jurisdiction over Canas.

**B.     Venue**

Canas also argues that the case should be dismissed on the basis of venue, but her exact argument is not clear. At page one of her motion, Canas "moves the Court for a change of venue on the ground of *forum non conveniens*." However, on page four, she asks the Court to "dismiss this matter for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3)." The common law doctrine of *forum non conveniens* is not the same as "improper venue." *Forum non conveniens* assumes a proper, but inconvenient, forum. Rule 12(b)(3) addresses the case where venue is truly improper.

Proper venue in a case involving diversity of citizenship is determined by reference to 28 U.S.C. § 1391(a), which provides that such an action may be brought "only in (1) a judicial district where any defendant resides [. . .], (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred [. . .], or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Under this statute, proper venue for this case would be only in the Southern District of Florida.[6] However, the Court must

---

[6] In opposition to Canas's motion, Marlite argues, in reliance on 28 U.S.C. 1391(a)(2), that the present forum has a substantial connection to Marlite's claims because the "confidential information [sought to be protected] is contained in company operating systems and databases which are located in Dover, Ohio; Canas availed herself of employment with Marlite, an entity headquartered in Dover, Ohio; and Canas interacted with her supervisors, human resource personnel, IT personnel and other co-workers who were located in Dover, Ohio." (Doc. No. 31, at 6-7.) These are arguments that go more toward the question of personal jurisdiction rather than venue. Further, § 1391(a)(2) does not refer to a "substantial connection" with this district; it requires that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. That is not so in this case; rather, virtually all of the events giving rise to the claims in this lawsuit occurred in Miami, Florida.

8

also take into account the provision in the Agreement, briefly alluded to in the discussion on personal jurisdiction, which states that the parties "consent and agree to jurisdiction and venue for any claim or cause of action arising under or related to this Agreement in the state or federal courts located in or for Tuscarawas County, Ohio." (Doc. No. 23-10, ¶ 13.)

Canas has offered no argument with respect to this provision in the Agreement and the Court perceives no reason to decline its enforcement. Therefore, the Court must conclude that venue is not *improper*, for purposes of dismissal under Rule 12(b)(3) and, to that extent, defendant's motion must be denied. Even so, the analysis does not end there. The mere fact that this Court may be a *proper* venue under the terms of the Agreement (even though not under § 1391), does not mean it is the *best* or *most convenient* venue. That takes the Court back to defendant's assertion of *forum non conveniens*.

Title 28, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, so long as the Court has personal jurisdiction over the defendant, it has the discretion to transfer the case to a more convenient forum, with or without a motion from either party. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (holding that the transferee court must have personal jurisdiction and proper venue over the action before a transfer under § 1404(a) is proper); *see also Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).[7]

> Among the factors to be considered [when deciding whether to transfer venue] are the nature of the suit; the place of the events involved; the relative ease of access to sources of proof; the nature and materiality of testimony to be elicited

---

[7] Even if venue were improper, this Court would still have discretion to transfer (as opposed to dismiss) the case under 28 U.S.C. § 1406, which provides for transfer "in the interest of justice [. . .] to any district or division in which [the case] could have been brought[,]" if the case was filed "in the wrong division or district[.]"

9

> from witnesses who must be transported; the respective courts' familiarity with applicable law and the condition of their dockets; and the residences of the parties. *See Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587, 589 (S.D.Ohio 1986).

*Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D. Ohio 1991).

Even the existence of the forum selection clause in the parties' Agreement does not preclude the transfer of venue. *See id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) for the proposition that "[s]ection 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs").

Nor does the fact that the Agreement is to be construed in light of Ohio law preclude a transfer to Florida. As in *Midwest Motor Supply*, "[t]he present case, an action for breach of a covenant not to compete, does not appear to present any novel or complex issues under Ohio law." 761 F.Supp. at 1319. "[I]t does not appear that Ohio contract law is so unique that this fact alone should strongly militate against transfer." *Id*.

In opposition to the motion, Marlite asserts that a majority of the witnesses and evidence relating to its confidential information reside in Ohio and that changing venue to Florida would only improperly transfer inconvenience from Canas to Marlite. It makes this argument, however, without identifying any particular witnesses. *See, e.g.*, *Superior Consulting v. Walling*, 851 F.Supp. 839, 845 (E.D. Mich. 1994) (where neither party had named its witnesses or identified documents, "transferring venue to Texas would simply have exchanged the inconvenience of one party for that of the other").

The Court disagrees with Marlite regarding the location of the witnesses. First, from testimony at the preliminary injunction hearing, the Court learned that the witnesses will most likely fall into two groups: employees of Marlite and customers of Marlite. Presumably,

Marlite will be able to compel the attendance of its own employees in either forum, Ohio or Florida, without the need for a subpoena. However, customers of Marlite who are likely to have been solicited by Canas would be located in the areas that Marlite's Miami, Florida plant services, namely, Florida, Georgia, North Carolina, South Carolina, Alabama, Mississippi, Louisiana, the Caribbean, Mexico, Central America and South America. (Tr. of Prelim. Inj. Hrg., at 31-32, Doc. No. 36.) These customers would not be within the subpoena power of this Court (*see* Fed.R.Civ.P. 45((c)(3)(A)(ii)) and, even if they were willing to voluntarily come to Ohio, that would be at great inconvenience to them.

>As in *Midwest Supply*,
>
>Applying the language of section 1404(a) and the pertinent case law, the Court finds that the balance tips in favor of transferring this case, somewhat in terms of the convenience of the parties but strongly in terms of the convenience of witnesses. Under the [Agreement] in question defendant's activities as plaintiff's sales representative were confined to certain specified [southern states] [. . .]. Any breach by the defendant of the covenant not to compete would have occurred in [those states], and thus the pertinent witnesses on the breach of contract issue, as well as to the other issues expected to arise in this case, would be located in those jurisdictions. [. . .] Additionally, transferring this case would appear to present little difficulty in terms of applying the pertinent Ohio law which the Court presumes, at this point, is applicable. Although the agreement provides for venue in [Tuscarawas] County, Ohio, and the Court must give some deference to plaintiff's choice of this forum, its home state, the Court nevertheless, for all the reasons stated, concludes that defendant has carried his burden of showing that for the convenience of the parties and witnesses, and in the interest of justice, this matter should be transferred.

761 F.Supp. at 1319-20.

This matter "might have been brought" in the United Stated District Court for the Southern District of Florida and the Court concludes that it should be transferred there.

11

## III. CONCLUSION

For the reasons discussed above, defendant's motion to dismiss (Doc. No. 24) is **DENIED**, but her motion to transfer venue to the United States District Court for the Southern District of Florida is **GRANTED**.

**IT IS SO ORDERED**.

Dated: August 6, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**